Good morning, Your Honors. Paula Redmond representing Appellant Ansar al-Muhammad. Your Honors, this case has got to be one of the most unusual voluntariness cases. This is true. The state court here made one critical error, and that is it ignored very basic Supreme Court law that in determining the voluntariness of a confession, one looks to the totality of the circumstances. The totality of the circumstances here reveal a case in which the state did not have enough evidence to prosecute Mr. Muhammad. Before he gave his confession, it induced him to confess in exchange for freedom for his religious leader, his Messiah, in an unrelated case in a different jurisdiction. After he confessed and the federal government released his Messiah from custody, Mr. Muhammad recanted his confession, thus, as far as he knew, abandoning any benefit that he stood to gain under the package deal plea bargain. Counsel, what will make a difference for me in this case is what actually went on in this meeting of the Ansar group at the jail. Who actually sponsored it? Who was there? How much did the government know about it? Well, Your Honor, we don't know exactly what happened at the meeting, and the reason that we don't know is that the United States attorney, who essentially I think could be said to have sponsored the meeting by convincing the Sacramento County Sheriff's Department to hold the meeting, did tape the meeting unbeknownst to the United States attorney, the Sacramento County Sheriff's did tape the meeting. The United States attorney found out that the meeting had been taped and ordered the Sacramento County Sheriff's to turn the tape over to the attorney for the spiritual leader. So we don't know exactly what happened at the meeting. We do know that present at the meeting was the spiritual leader himself, all the other members of the sect who were parties to the plea bargain, and my client. And we know that the purpose of the meeting was to persuade the other Ansars to fall into line, to sign on to this plea bargain, and to make a plea bargain. For the benefit of their spiritual leader. All right, what role did Mr. Cameto play with respect to this meeting? I believe it was Mr. Cameto who suggested that this meeting be held because the attorney... Cameto was the attorney for... For the spiritual leader. For the spiritual leader. Yeah. Mr. Brown. So he, it was his idea that the meeting should take place. Did he attend it? No, he did not attend the meeting. Was there an explanation for that? The explanation for that... Given the fact that he suggested the meeting in the first place, or at least allegedly suggested the meeting for the first place? I'm sorry, Your Honor. Could you clarify what... Well, you're saying that Cameto suggested the meeting. Yes. Okay. But didn't bother to attend. No, I believe he relied upon his client, who was the spiritual leader of the other people attending the meeting, to bring his followers into line so that everyone would sign on to the plea bargain. Was this the meeting only of the client, so to speak, or were any attorneys present? There were no attorneys present at the meeting, Your Honor. And as I said, all we know about what happened at this meeting is that before the meeting, through eight months of negotiation, Mr. Muhammad would not confess. And after the meeting, he did confess. And after his confession, Mr. Brown, the spiritual leader, was able to fulfill the requirements of his plea bargain, among which were that he persuade my client to confess. He did so, and he was permitted to plead to a time-served sentence. Well, all right. Given all that, what's your strongest argument for remand at this point? You're asking for an evidentiary hearing, in effect. No, Your Honor. I don't think there's any need for an evidentiary hearing, because there's really no dispute between the parties as to what happened. So tell us what you're advocating, then. Well, we're advocating that the writ be granted, that the case be remanded with directions to grant the writ. Well, if there was State action, where did the district court err as a matter of law? Would you just help explain that? That's my question. Well, the district court erred. You bring up State action. Forget my comment. Just tell us where the district court erred as a matter of law. All right. Basically what we have here, again, is a case where the totality of the circumstances show that appellant was induced to confess through State action, and I'll go into that if the Court likes, to an unrelated crime in a separate jurisdiction he would not have confessed to if his will had not been overborne by his religious beliefs, his loyalty to his spiritual leader, that the government knew that this was the only way that they were going to produce a confession from him. Will was overborne by whom? His will was overborne by the offer of the package deal plea bargain. By whom? By everyone else involved in the case. Well, it seems to me that though the primarily movers was this spiritual leader and those people at the meeting, right? Well, Your Honor, that may be the case. But it may be the case, in other words, that the original idea for the plea bargain came from the spiritual leader and his attorney. But I don't think that that relieves the government from responsibility for running with the idea, for holding eight months' worth of negotiations to facilitate the idea. What you said was the eight months were fruitless and nothing happened until the meeting, and it's the meeting that induced him to change his mind. Something happened at that meeting, right? Quite possibly. Quite probably. But don't you think, I mean, I mean, most of the most of the, you know, the moving force comes from maybe not the spiritual leader, but from the persons in attendance at the meeting. I mean, I don't know whether they convince him spiritually or they threaten him with murder in prison if he didn't confess, you know, or something. But something happened at that meeting. Seems to me that that's the most reasonable assumption. And if that's the case, I don't know if you can charge that to the government. Well, Your Honor, in that case, we still have a situation in which the government arranged for the meeting. The government told the spiritual leader. It's in the spiritual leader's plea bargain. No, no, wait a minute. You say the government arranged the meeting. I thought you said earlier it was Kamado's idea. I said it was Kamado's idea. Okay. That's different from saying that Kamado arranged the meeting. When you say arrange, you mean, you know, because these people are all prisoners, they permitted them to get together in a room in the jail, right? Correct. Which, as the U.S. attorney said, was a highly unusual thing for the government to arrange. I must point out to the court that this is not the first case in which the government has not been the only mover in a voluntariness case. From my clarification here, you keep using the word government, and I'm not sure whether that means the sheriff, whether it means the U.S. attorney, means the prosecutor, the state prosecutor. Help us with that. Your Honor, it means all of them. I'm using it as a blanket term. It so happens that this plea bargain involved the state, it involves the federal government, and it's hard to get one's mind around. Okay, but for you to establish that this was an unconstitutional plea, that it was the product of coercion, improper coercion, government-induced coercion, and presumably the prosecutor who stood to win a conviction coercion, I think you have to be a little more specific. Certainly from my point of view, I think I need to understand precisely what's the theory under which you can make it out here. Because on the surface, it has some appeal that someone is persuaded because it will let his god, so to speak, off the hook if he surrenders his own will. But if he does that on his own terms and for reasons that are best to him, that's one thing, in which case there is no constitutional violation. The violation only arises if you can establish that somehow or other that some state actor has induced this confession wrongfully. Am I right in terms of the applicable law or not? I think you're absolutely right in terms of the applicable law. But to say that there was no state action in this case ignores the fact that the plea bargain could not have been made without government action. The meeting could not have occurred without government action. Was that good enough? I believe it is, Your Honor. Government is responsible for overbearing someone's will? Let's take a more simple example. Let's say that the other members of Appellant's sect had gone to the government and said, give us the opportunity to beat up Mr. Muhammad, and then we believe he will confess. And the government had arranged a situation where they were allowed to beat him up. Could the government then say, there was no state action, it wasn't our idea to beat up Mr. Muhammad, the idea came from the spiritual leader. This is different. Where is the evidence that the government formed this, put this all together, intentionally knowing that they were going to force him in some way to confess to something that he wouldn't otherwise do? Because beating is the purpose of the meeting, but in your hypothetical. But all we have here is just a meeting. Well, we do have in the record all of the attorneys involved's admissions that they knew the position that Willie Brown held in the sect. We have the fact that the government knew, the state knew, that they did not have enough evidence to proceed against Mr. Muhammad in the absence of his confession. And they knew that the only way to get him to confess was to promise him freedom for his spiritual leader. They knew this because he had been in custody for eight months previously and he had refused to confess, despite the fact that he was presented with the minimal physical evidence that they had against him. I. Did you. There was no evidentiary hearing in this case, right? Pardon? There was no evidence. There was no evidence you're hearing. Did you ask for an evidentiary hearing? No, I did not. Why? Because you think the facts are already developed and not in controversy? Yes, Your Honor. All right. Okay. I think we understand your position. We should hear from the government. Thank you. You have a few minutes for rebuttal. May it please the Court. Eileen Bunney, Deputy Attorney General for Appellee in this case. I'd like to point out that this is, as the Court is, I'm sure, aware, it is a federal habeas case. An appellant is not entitled to relief unless the defendant is acquitted of a felony.  And that is, the California court's decision was contrary to or involved in unreasonable application of Supreme Court authority. It isn't just some law school situation. You have to determine that the California court erroneously and unreasonably applied Supreme Court authority. And we do believe. Speaking of that, where does the California court get into this issue of the coercion based on religious conviction, particularly where the person being benefited is tantamount to God as far as this individual is concerned? I assume that there's no issue as to sincerity of all of this. The question is, to what extent did the California court examine these relevant constitutional issues? Okay. We believe that both the state trial court and the state appellate court reviewed these. In fact, there was an evidentiary hearing in state trial court as to this precise issue. And the state trial judge, I think, made a very good observation. He did, in fact, acknowledge, he said he wasn't going to look to the sincerity of the defendant's religious beliefs. That wasn't the job of the court. And that is correct. But the court said motivation is not the equivalent of coercion. If this court or any court was to try to look behind the reasons and motivations of criminals who confess and use that as a yardstick, we would never have a confession that would hold up to the standard. Okay? And that's exactly what happened. The state court of appeal also looked, first of all, whether there was any coercion, period. Then, of course, the next question becomes, is there state action? Even assuming there's coercion as argued by this religious leader, you cannot attribute that to the state. Well, if there's state action, it's either because of the U.S. attorney, ironically, not being the state, or the state prosecutor or the two of them functioning in tandem, which leads to the meeting in the jail. Help us, from your standpoint, understand what was going on there and how it was brought about and to what extent that might have played a role in trying to coerce a confession in this case. First of all, Your Honor, let me clarify something. The reason I responded that way is because the appellant does argue that the answer is Willie Brown's attorney was a state actor, and that's the reason I distinguished that. I think that's clearly wrong, and that's why I went specifically to the government. What happened as far as setting up the meeting, the original idea for this global agreement originated with Mr. Kometko. Kometko, I'm sorry, I don't know how to pronounce his name. With Willie Brown's attorney, with Willie Brown and his attorney. Okay, and he did not attend the meeting. Can we draw any inference from that? The inference is all these defendants were represented by counsel. They wanted to get together. He approached the U.S. attorney and said, can you arrange this? Obviously these people are in jail. They can't arrange it themselves. And all that happened was the U.S. attorney said, okay. There's no advanced information. There was no directive from the U.S. attorney. And the state prosecutor really wasn't involved in this part of it. It was just the U.S. attorney. The U.S. attorney doesn't make any direction, and there was nothing in this record, and no inference can be made that appellant was somehow compelled to attend this meeting against his will. He could go or not go. The other thing that needs to be pointed out is appellant did have independent representation throughout the entire process. If, as here, he chooses to attend a meeting with his friends, religious compatriots, however you want to characterize the other Ansars, that was his choice to make. There was no compulsion on the part of the government to make him show up at this meeting. The district court seemed to say that the government was like a facilitator. Would you agree with that? Clearly there had to be some ‑‑ the U.S. attorney had to get involved in order for this to happen that way. I mean, there may have been other ways it could have been arranged. Presumably this was the easiest. They could have all bailed out. He could have ‑‑ the Sacramento jail people could have put Willie Brown next to appellant. I mean, there were a lot of things that could have happened, but this was what was approached by Willie Brown's attorney. He, the U.S. attorney, agreed to ‑‑ passively agreed to do that. How many of these participants in the meeting were in federal custody versus state custody? They were all in federal custody. As far as I know, these were all federal defendants. The only defendant ‑‑ the only Ansar defendant that was linked to the Loomis case, our case, was appellant. Okay. Well, they were in federal custody, but they were still in state custody. They were in state ‑‑ they were in Sacramento County jail. Yes, they were in state custody in that respect, but they were on federal charges. That's probably a more accurate response. Okay. All right. That helps. When appellant made this confession, he was represented by competent counsel. Counsel was actually present during the confession. Appellant bears the burden of demonstrating that coercive conduct by the government caused the confession. The mere promise of favorable treatment does not establish involuntariness. Colorado versus Connolly holds appellant's perception of coercion flowing from the voice of God. However important or significant such a perception may be in other disciplines, it's not a matter to which the U.S. Constitution doesn't speak. So the state court clearly found that appellant chose to confess because he was motivated to help his spiritual leader. Self‑sacrifice doesn't constitute coercion. This guy decides to fall on the sword. As United States versus Carr cited in our brief says, we have insisted that an accused's choice be respected, and if he elects to sacrifice himself for such motives, that is his choice. That's precisely what happened here. He chose. Coercion usually involves situations where your will is overborne, pressure is exerted on you. These are all the normal and justifiable concerns when you're talking about voluntariness of a confession. That doesn't translate to this situation. He had his own attorney. There was arm's length dealing. An appellant tries to say, contrary to his testimony in the state evidentiary court, that his religious leader pressured him into this, which, by the way, he specifically denies in state court. That doesn't translate to involuntariness of a confession. I think we understand. Okay. Thank you, Your Honors. I have one other question. Yes, Your Honor. There's some inference here that the consideration, so to speak, for the confession was the elimination of the death penalty as an option. Is that realistic or not? It was insisted upon. The original, the first meeting between what I will call the state prosecutors, the Solano County DA's office and appellant's attorney, appellant's attorney wanted this treated as a federal determined term case. That was the first meeting. The Solano County DA's office comes back at the second meeting and says, uh-uh, and the only thing we're going to give you is we will give you life without possibility of parole rather than capital. I will say that the facts of this case cry out for capital treatment. You look at the facts of this case, this is a capital case. This is a true capital case. So he gets that. And not only that, he gets more than that. His attorney says that's not good enough. And so he negotiates to get this guy to do a two-tier, basically a two-tier negotiation. First of all, I'm not saying anything until you take away the capital case, period. So they agree to that. So now it's down to life without possibility of parole, which federal courts and reasonably determine that's a significant benefit to this individual defendant, not to his religious leader. That's his benefit. But was it realistic? Was it really? This was a realistic capital case. At the time, counsel makes a lot to say that, you know, they didn't have enough evidence. Well, maybe it wasn't. You know, that doesn't mean that they were going to prosecute it tomorrow. But this case was going to be prosecuted as a capital case, absolutely. If you look at the facts of the case, clearly this is a case. This is a capital case, a true capital case. So he gets the benefit of that. And not only that, his attorney says that's not enough. And so they go down and they still negotiate back and forth. But he's got his attorney watching out for him. He says, okay, if he testifies against his co-defendant, then he gets only one count of murder and he gets 25 to life. Possibility of parole, obvious, young defendant. Clearly he himself got a benefit. This wasn't a situation where there was no benefit to him. There was a clear benefit to him. I hope that answers the Court's question. Thank you, Your Honors. The State didn't have a capital case against Mr. Mohamed. As a matter of fact, until Mr. Mohamed confessed, the State didn't have a case against him at all.   And the reason they've conceded prejudice in this case, and the reason they've conceded prejudice, is the extreme paucity of physical evidence that there was against Mr. Mohamed. So to say that he obtained protection from the death penalty through this deal presumes that that was of some importance to him. It wouldn't have been necessary at all unless he had confessed. The unimportance of that aspect of the deal to Mr. Mohamed can further be seen from the fact that if you look at the terms of the plea bargain, it not only says that once he confesses, the government will forego the death penalty, it also says they will file a complaint charging him with two counts of first-degree murder, two counts of murder, rather. In fact, Mr. Mohamed was charged with and convicted of three counts of murder based on his confession. So presumably, the other terms of the deal may have been important to his attorney, and rightfully so, but they weren't of concern to Mr. Mohamed, who promptly upon learning that his spiritual leader had been freed, recanted his confession. And thus, as far as he knew, forewent any benefit that he accrued under the plea bargain. Appelli also points to the importance of counsel in general. And all I have to say to that, Your Honors, is counsel cannot immunize you against an offer that you cannot refuse, and that is what the government made to Mr. Mohamed in this case. And the fact that the original idea for the bargain came from someone other than the government does not mean that there was no government action in this case. If you look at the state court's opinion, the state court blinks at this. The state court says, Appellant's hope for favorable treatment for his religious leader in exchange for his statement does not render the confession involuntary, absent any evidence of an assurance of leniency by law enforcement officials. Now, why would the state court say something like that? There was state action in this case. Without the state action, Appellant would not have been able to sacrifice himself to save his spiritual leader. The leniency being the withdrawal of the death penalty, or what? I mean, what would the leniency be there? They say absent any evidence of an assurance of leniency. My interpretation is that the leniency that was important to Appellant was the leniency to his spiritual leader. Right. So everything that you're arguing is that his motivation was to save the spiritual leader. Correct. And that this is indistinguishable from a case where a defendant makes a confession in order to save a co-defendant who is a child or a spouse, would be the more usual situations. But someone who is more dear to him, consistent with the ‑‑ No, but your arguments are all consistent with the government's theory that what he wanted to do, the government wasn't responsible for his will being overborne. It was the religious sect that was in his office that were doing this. Your Honor, I believe the court is confusing the fact that the original idea came from the spiritual leader with the fact that the government made him this offer. The government originally approached Mr. Muhammad with this idea. The spiritual leader's attorney didn't originally approach him. Mr. Muhammad's attorney at the time testified that the first person that approached him with the idea for this deal was a United States attorney. The United States attorney was eager to resolve this case. They had some interest in resolving the Loomis case as well as the Federal Rico case for some reason that's not clear from the record. They approached my client with the idea for this deal. And, you know, to say that it's something he wanted to do, I believe, confuses volition with voluntariness. And in any case in which a defendant gives a confession after being offered something that overbears his will, the confession is going to be voluntary in the sense of volitional. Thank you. Thank you, Your Honors. Thank you. The case just argued is submitted for decision. That concludes the Court's calendar for this morning, and the Court stands adjourned.
judges: Schroeder, O'scannlain, Tashima